UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MURTHY MUTHUSWAMY                    CIVIL ACTION

VERSUS                               NO. 19-112-WBV-DPC

MICHAEL EMMETT LIBERTO, ET AL.       SECTION 'D' (2)

ORDER

Before the Court is a Motion for Summary Judgment, filed by defendants, Laura E. Aucoin, Ryan Alexander Carruth, Stephen Culotta and the City of Covington,[1] and a Motion for Summary Judgment filed by defendant, Michael Liberto.[2] Both motions are opposed,[3] and Defendants have filed a joint Reply.[4] After careful consideration of the parties' memoranda and the applicable law, both Motions for Summary Judgment are **GRANTED**.

I.      FACTUAL BACKGROUND

This is an excessive force case. Murthy Muthuswamy ("Plaintiff") alleges that on January 7, 2018, he was near a Rock-N-Blues Café in Covington, Louisiana attempting to retrieve personal items he had left inside of the establishment when he was approached by City of Covington Police Officers Laura E. Aucoin and Michael Emmett Liberto.[5] Plaintiff claims that he was briefly questioned before being placed

---

[1] R. Doc. 31.
[2] R. Doc. 32.
[3] R. Doc. 38.
[4] R. Doc. 41.
[5] R. Doc. 1 at p. 2.

in an "armbar hold" and thrown to the ground by the officers.[6]  Plaintiff asserts that
Officer Liberto repeatedly slammed his head into the pavement, causing severe
injuries.[7]  Upon information and belief, Plaintiff alleges that Officer Ryan Carruth
had also arrived at the scene, and was within visual distance of the attack.  Plaintiff
alleges that Officer Liberto then escorted him to his patrol car to transport Plaintiff
to the Covington Police Department.  Plaintiff claims that, in "his severely concussed
state" he fell to the ground and hit his head outside of the patrol vehicle.[8]  Plaintiff
claims that he suffered serious and permanent injuries as a result of the officers'
actions, including damage to his optic nerve and permanent vision loss.

On January 7, 2019, Plaintiff filed a Complaint in this Court, asserting a 42
U.S.C. § 1983 claim against Officer Liberto, Officer Aucoin, Officer Carruth, Chief of
Police Stephen Culotta and the City of Covington (collectively, "Defendants"), based
upon excessive force and unreasonable seizure in violation of his Fourth Amendment
rights.[9]  Plaintiff asserts that Defendants' use of force was "objectively unreasonable,
excessive and conscience shocking."[10]  He further claims that Chief of Police Culotta
is liable for his injuries due to improperly hiring, training, and supervising his
employees.[11]  Plaintiff alleges that the City of Covington is liable under *respondeat
superior* for the actions of the officers during the course and scope of their
employment as police officers for the City of Covington.  Each defendant timely

---

[6] *Id*. at p. 3.
[7] *Id*.
[8] *Id*.
[9] R. Doc. 1.
[10] *Id*. at p. 4.
[11] *Id*. at p. 5.

answered and filed affirmative defenses asserting, among other things, qualified immunity.[12]

Thereafter, Defendants filed motions to limit discovery to the issue of qualified immunity,[13] which Plaintiff opposed.[14]   The United States Magistrate Judge ultimately granted the motions and issued a Qualified Immunity Scheduling Order.[15] Pursuant to that Scheduling Order, Plaintiff was ordered to file a Federal Rule of Civil Procedure Rule 7(a) Reply "specifically tailored to defendants' assertion of qualified immunity and allegations in support of this defense."[16]

On June 11, 2019, Plaintiff filed a Rule 7(a) Reply, providing additional details of what transpired on the evening of January 7, 2018.[17]  Plaintiff asserts that, on the night in question, he was attempting to re-enter the Rock-N-Blues Café to retrieve personal items he had left earlier, but that he was refused re-entry.  Upon being refused re-entry, Plaintiff claims that he became upset and flipped over a table.[18] Plaintiff asserts that police were called to the scene, and that Officers Aucoin and Liberto responded to the call.  Plaintiff alleges that the police reports indicate that he allegedly "jerked" his arm away from Officer Liberto's grip, then "used his left hand to push Officer Liberto's right shoulder, causing Officer Liberto to lose balance" as Plaintiff was being escorted away from the establishment.[19]  Plaintiff claims it was

---

[12] R. Docs. 5, 6, & 8.
[13] R. Docs. 7 & 9.
[14] R. Doc. 11.
[15] R. Docs. 23 & 24.
[16] R. Doc. 24 at p. 4.
[17] R. Doc. 27.
[18] *Id.* at p. 2.
[19] *Id.*

at this point that Officers Aucoin and Liberto participated in the "take down" of Plaintiff, using an "armbar" takedown to get Plaintiff on the ground.[20]   Plaintiff asserts that Officer Liberto repeatedly slammed his head into the pavement while he was on the ground and the officers were trying to handcuff him.   Plaintiff believes that Officer Carruth had arrived at the scene at some point, and that Officers Carruth and Aucoin witnessed this encounter.[21]   Upon escorting Plaintiff to the police car, Plaintiff alleges that Officer Liberto again threw him to the ground, which is when the officers noticed that he was unconscious.[22]   Plaintiff claims that, while he was unconscious, Officer Liberto drove him to the Covington Police Department, where he was then transported to St. Tammany Parish Hospital Emergency Room and treated for his injuries.[23]   Plaintiff alleges that he was subsequently arrested for violating La. R.S. 14:103, Disturbing the Peace, La. R.S. 14:108, Resisting an Officer, and La. R.S. 14:34.2, Battery of a Police Officer.[24]   Plaintiff asserts that he pled guilty to violating La. R.S. 14:108, Resisting an Officer, in November 2018.[25]

Plaintiff further argues in his Rule 7(a) Reply that Defendants are not entitled to qualified immunity because the officers' actions were objectively unreasonable.[26] Plaintiff asserts that the force used by Defendants was excessive, as Plaintiff was unarmed and nonthreatening during the entire evening and encounter.[27]   Plaintiff

---

[20] *Id*.
[21] *Id*.
[22] *Id*. at p. 3.
[23] *Id*.
[24] *Id*.
[25] *Id*.
[26] *Id*. at pp. 5-6.
[27] *Id*. at pp. 3 & 5.

argues that he posed no threat to the officers and that the force used was clearly excessive and disproportionate to the need.[28]

On November 19, 2019, Defendants filed two Motions for Summary Judgment, asserting that Plaintiff's claims must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).[29]   Defendants argue that Plaintiff's § 1983 claim of excessive force necessarily implies the invalidity of Plaintiff's conviction for violating La. R.S. 14:108, Resisting an Officer, which has not been set aside.  Defendants point to Plaintiff's deposition testimony, wherein Plaintiff testified that he did not believe he posed a threat to the officers and that he only pled guilty to resisting an officer on the advice of his attorney to expedite resolution of the criminal charges.[30]   Noting that Plaintiff pled guilty pursuant to Louisiana Code of Criminal Procedure Article 894, Defendants assert that the deferred imposition of a sentence under Article 894 does not impact the application of *Heck*.[31]   Defendants claim that Plaintiff denied resisting the officers numerous times during his deposition, and testified that he was compliant.[32]   Defendants contend that Plaintiff specifically denied jerking his arm away from, and pushing, Officer Liberto.[33]

Defendants also argue that they are entitled to qualified immunity. Defendants assert that Plaintiff bears the burden of establishing that the officers violated a constitutional right that was clearly established at the time of its violation.

---

[28] *Id*. at p. 6.
[29] R. Docs. 31, 32.
[30] R. Doc. 31-1 at p. 8 (*citing* R. Doc. 31-4).
[31] R. Doc. 31-1 at p. 8.
[32] *Id*.
[33] *Id*.

Defendants argue that Plaintiff has failed to make any showing to satisfy this burden. Defendants contend that an official's conduct violates clearly established law when, at the time of the challenged conduct, it is sufficiently clear that every reasonable official would have understood that what the official was doing violated that right.[34] Under such an analysis, Defendants argue that Plaintiff cannot establish that the defendant-officers violated a clearly established right, as they were using reasonable force to subdue what they perceived to be an intoxicated and combative individual.

Plaintiff opposes the Motions, asserting that *Heck* does not bar his excessive force claim because the claim would not undermine his guilty plea to resisting arrest.[35] Looking at the nature of the offense and of the claim, Plaintiff emphasizes the extent of damages he sustained as a result of Defendants' actions. Plaintiff argues that both the use of force and the alleged justification for the use of force are genuine disputes of material fact and, therefore, his claims not barred under *Heck*.[36] Alternatively, should the Court agree with Defendants' application of *Heck*, Plaintiff argues the Court should maintain his § 1983 claim concerning the use of excessive force during his arrest for disturbing the peace and battery of a police officer, two charges that were subsequently nolle prossed by the District Attorney.[37] In addition, Plaintiff asserts that the officers should not be entitled to qualified immunity because a material issue of fact remains in dispute regarding its application in this case. Plaintiff points to the Affidavits of Officers Liberto and Aucoin, noting that Officer

---

[34] R. Doc. 31-1.
[35] R. Doc. 38.
[36] *Id*.
[37] *Id*.

Liberto's Affidavit states that, "Aucoin and Carruth proceeded to gain control of Mr. Muthuswamy while on the ground and placed handcuffs on Mr. Muthuswamy."[38]  In contrast, Officer Aucoin's Affidavit states that, "Plaintiff attempted to push himself off the ground while Officer Liberto and I were instructing him to remain on the ground and to place his hands on his back as he was under arrest and we were trying to handcuff him."[39]  Plaintiff claims those two statements show that Defendants are not in agreement as to which officers were involved at key points in restraining and arresting him and, thus, raise a genuine issue of material fact.[40]

In their joint Reply brief, Defendants point out that much of Plaintiff's Opposition brief is unsupported by reference to any evidence in the record and, therefore, Plaintiff has not demonstrated a genuine issue of material fact for trial.[41] Defendants respond that Plaintiff's argument that he was arrested for other charges that were subsequently nolle prossed by the District Attorney is of no moment when, as here, Plaintiff pled guilty to resisting arrest.[42]  Defendants argue that Plaintiff has failed to provide any evidence that the force used by the officers was unreasonable or excessive in light of the facts established by the record.  Those facts include that Plaintiff was observed flipping a patio table over after being refused re-entry to the establishment, was in an intoxicated condition, became combative, and repeatedly

---

[38] *Id*.
[39] *Id*.
[40] The Court notes that Plaintiff's "Statement of Genuine Issues of Material Fact," as required by Local Rule 56.2, is a verbatim regurgitation of the first three pages of Plaintiff's Rule 7(a) Reply (R. Doc. 27), and not a separate and concise statement of the material facts which he contends present a genuine issue.
[41] R. Doc. 41.
[42] *Id*. at p. 3 (citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)).

resisted arrest.[43]   Defendants re-assert that allowing Plaintiff to proceed with an excessive force claim would impugn Plaintiff's conviction for resisting an officer.[44] Finally, Defendants argue that Plaintiff has failed to establish that Defendants violated one of his constitutional rights and that the constitutional right was clearly established at the time of the alleged violation.[45]   Defendants assert that Plaintiff's arguments regarding their use of excessive or unreasonable force fail to address the officers' specific conduct in the context of the facts established in this case, which is required by law.[46]

## II.     LEGAL STANDARD

### A. Summary Judgment Standard.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.[47]   A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[48] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that "the evidence is such that a reasonable jury could return a verdict for the non-moving

---

[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (*citing* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).
[48] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

party."[49]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[50]  Nor is the mere existence of some alleged factual dispute between the parties sufficient to defeat an otherwise properly supported motion for summary judgment.[51] Rather, Rule 56 mandates that summary judgment shall be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[52]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[53]

### B. The Applicability of *Heck v. Humphrey*.

Title 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights,

---

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
[50] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[51] *Anderson*, 477 U.S. 242, 106 S.Ct. 2505.
[52] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.
[53] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured.[54]

Section 1983 provides a remedy for the violation of federal constitutional or statutory rights under color of state law; it does not create any substantive rights.[55] "An underlying constitutional or statutory violation is a predicate to liability under § 1983."[56] To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[57]

In *Heck v. Humphrey,* an inmate brought a § 1983 action against county prosecutors and a state police investigator alleging that his conviction for voluntary manslaughter violated his constitutional rights because it was based on an unlawful investigation, an illegal identification procedure, and the unlawful destruction of evidence.[58]  The question before the Supreme Court was whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983.[59]  The Supreme Court held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct

---

[54] 42 U.S.C. § 1983.
[55] *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quotation omitted); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879-80 (5th Cir. 2004) (citation omitted).
[56] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[57] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[58] 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
[59] 512 U.S. at 478, 114 S.Ct. at 2368.

appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[60]  The Supreme Court instructed that, "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."[61]  If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.[62]  However, if the district court determines that the § 1983 claim, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the Supreme Court held that the action should be allowed to proceed, in the absence of some other bar to the suit.[63]

In *Arnold v. Town of Slaughter,* the United States Court of Appeals for the Fifth Circuit held that *Heck* does not act as a bar to all excessive force claims.[64]  The Fifth Circuit explained that, "By proving an excessive force claim, a plaintiff will not invariably invalidate his conviction."[65]  According to the Fifth Circuit, whether *Heck* bars a plaintiff from bringing a § 1983 claim "depends on the nature of the offense and of the claim."[66]

---

[60] 512 U.S. at 486-87, 114 S.Ct. at 2372 (citations omitted).
[61] 512 U.S. at 487; 114 S.Ct. at 2372.
[62] *Id*.
[63] 512 U.S. at 487, 114 S.Ct. at 2372-73 (citations omitted).
[64] 100 Fed.Appx. 321, 323 (5th Cir. 2004).
[65] *Id*. (citing *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996)).
[66] 100 Fed.Appx. at 323 (citing *Hudson*, 98 F.3d at 873).

### C. Burden of Proof for Municipal Liability.

Governmental entities "are not vicariously liable for the actions of their employees under § 1983."[67]  To determine whether municipal liability attaches, the Court looks to whether unconstitutional conduct is directly attributable to the municipality through some official custom or policy, as "isolated unconstitutional actions by municipal employees will almost never trigger liability."[68]  Plaintiff must therefore prove, "(1) an official policy or custom of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'"[69]  Actions of officers of a municipality do not render the municipality liable under § 1983 unless they execute official policy.[70]  Moreover, where, as here, "the alleged policy is one of inadequate police training, the plaintiff can only satisfy the first element of municipal liability if the failure to train satisfies the 'deliberate indifference' standard that applies to supervisor liability."[71]

### D. Qualified Immunity and 42 U.S.C. § 1983 Claims.

Government officials may invoke qualified immunity as a defense to § 1983 claims, which "shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[67] *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[68] *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).
[69] *Pineda v. City of Houston,* 291 F. 3d 325 (5th Cir. 2002).
[70] *Id.*
[71] *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

have known."[72]   The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[73]  "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[74] "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[75]   Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[76]

Once the government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[77]  To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[78]  It is up to the district court's sound discretion to decide which

---

[72] *Mabry v. Lee County*, 100 F.Supp.3d 568, 572 (N.D. Miss. 2015) (quoting *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *cert. granted, decision rev'd on other grounds*, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)).

[73] *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)) (internal quotation marks omitted).

[74] *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

[75] *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001)) (internal quotation marks omitted).

[76] *Pearson v. Callahan*, 555 U.S. at 231, 129 S.Ct. 808.

[77] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[78] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.[79]

## III.   ANALYSIS

### A.  Plaintiff's § 1983 claim is barred by *Heck v. Humphrey*.

In their Motions for Summary Judgment, Defendants argue that Plaintiff's § 1983 claim is barred by *Heck v. Humphrey*.[80]  As previously discussed, the Supreme Court in *Heck* held that when a plaintiff seeks damages under § 1983, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[81] The Fifth Circuit has further instructed that, "*Heck*'s bar extends to convictions obtained through guilty pleas."[82]

Here, Plaintiff was charged with, and pled guilty to, violating La. R.S. 14:108, Resisting an Officer.  That statute provides, in pertinent part:

A.  Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

B.  (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.

---

[79] *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818.
[80] 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
[81] 512 U.S. at 486-87, 114 S.Ct. at 2372.
[82] *Thomas v. Pohlmann*, 681 Fed.Appx. 401, 406 (5th Cir. 2017) (citation omitted).

>     (b) Any violence toward or any resistance or opposition to the
>     arresting officer after the arrested party is actually placed under
>     arrest and before he is incarcerated in jail.[83]

Plaintiff correctly points out, and Defendants acknowledge, that *Heck* does not act as a bar to all excessive force claims.  Whether *Heck* bars a § 1983 claim "depends on the nature of the offense and of the claim."[84]  As such, it entails a fact-specific inquiry.

Defendants contend that Plaintiff's allegations and deposition testimony challenge the factual basis of the crime of resisting arrest, and that success on these claims would necessarily impugn his conviction for resisting arrest.  Specifically, Defendants point to Plaintiff's testimony where he denied resisting the officers and testified that he believed he was compliant.[85]  They further highlight Plaintiff's testimony that he did not jerk his arm away from one officer, nor attempt to push an officer.  Plaintiff further testified that he was not struggling with the officers.  As such, Defendants argue that success on Plaintiff's excessive force claims would necessarily undermine his guilty plea to resisting an officer.  The Court agrees.

Reviewing the facts in evidence in this case, Defendants contend that Plaintiff resisted arrest by being combative, pushing an officer, and refusing to comply with the officers' commands while they attempted to handcuff him.[86]  Officers Aucoin and Liberto provided Affidavits stating that they were on patrol in the area of Rock-N-Blues Café at approximately 2:00 a.m. on January 7, 2018, when they encountered Plaintiff, who had been refused re-entry into the establishment.  The officers observed

---

[83] La. R.S. 14:108.
[84] *Arnold v. Town of Slaughter*, 100 Fed.Appx. 321, 323 (5th Cir. 2004).
[85] R. Doc. 31-1.
[86] R. Doc. 31-5, Affidavit of Officer Laura Aucoin; R. Doc. 32-3, Affidavit of Officer Michael Liberto.

Plaintiff trying to flip over a piece of furniture.[87]  When the officers approached and attempted to engage Plaintiff in conversation, they noticed that his breath smelled of alcohol and he was slurring his speech and swaying.[88]  As the officers attempted to escort Plaintiff from the area, Plaintiff jerked his arm away from the officers, cursed the officers, and pushed one of the officers.[89]  As a result, the officers utilized an "armbar takedown" of Plaintiff to put him on the ground.[90]

The evidence further shows that Plaintiff continued to resist the officers while on the ground by attempting to push himself up off of the ground and refusing to place his arms behind his back.[91]  The officers eventually were able to handcuff Plaintiff and led him to the patrol car.  Officer Liberto stated that he placed Plaintiff against the patrol car to perform a pat down when Plaintiff began to use his body to push away from the patrol car and threw his head back in an  attempt to head butt the officer.[92]  Officer Liberto again took Plaintiff to the ground, where it appeared that Plaintiff lost consciousness.[93]  Plaintiff was taken to the Covington Police Station where, he was examined by medical personnel and subsequently transported to the hospital.

During his deposition, Plaintiff was questioned regarding the events of that night.  He testified that he had been with friends at a parade since earlier in the evening, and that they subsequently went to several bars together.   Plaintiff

---

[87] R. Doc. 31-5 at ¶ 5; R. Doc. 32-3 at ¶ 8.
[88] R. Doc. 31-5 at ¶ 7; R. Doc. 32-3 at ¶ 9.
[89] R. Doc. 31-5 at ¶ 8; R. Doc. 32-3 at ¶ 11.
[90] R. Doc. 31-5 at ¶ 8. R. Doc. 32-3 at ¶ 12.
[91] R. Doc. 31-5 at ¶ 8; R. Doc. 32-3 at ¶ 12.
[92] R. Doc. 32-3 at ¶ 14.
[93] *Id.*

estimated that he had consumed approximately four drinks that evening.[94]  At some point later in the evening, Plaintiff's friends went home.  Plaintiff remained at the bar until around 2:00 a.m., when the bar closed.

Plaintiff recalls returning and attempting to enter Rock-n-Blues to retrieve his glasses, which he believed he had left in the establishment, and being denied re-entry. He recalls the officers approaching him, and he believes they may have tried to walk him away from the establishment.[95]  Plaintiff denied jerking his arm away from the officers.[96]  He further denied pushing the officers as they attempted to move him.[97] Plaintiff testified that he was forced "fairly violently" to the ground, and when he turned his head to ask a question, his head was forced into the concrete very violently, causing injuries.[98]  Plaintiff also stated that he was not struggling with the officers when they attempted to handcuff him, and that he was being as compliant as possible.[99]  Plaintiff admitted that he lifted his head and shoulders up when he was on the ground and tried to ask the officers why he was being arrested.[100]  He further acknowledged that he cannot recall the events that occurred at the patrol car, which he attributes to having sustained a concussion, but stated that he did not believe he was struggling with the officer.[101]  In his Complaint Plaintiff alleges that "After briefly questioning him, Officer Liberto placed Dr. Muthuswamy in an arm-bar hold

---

[94] R. Doc. 31-4 at p. 10.
[95] *Id* at p. 13.
[96] *Id*.
[97] *Id*.
[98] R. Doc. 32-4 at p. 9.
[99] *Id*. at 14.
[100] *Id*. at pp. 15-16.
[101] *Id*.

and threw him to the ground.  After getting Dr. Muthuswamy to the ground, Officer Liberto repeatedly slammed Dr. Muthuswamy's head into the pavement, causing severe injuries."[102]  On November 27, 2018, Plaintiff pled guilty under La. Code Crim. P. art. 894 to violating La. R.S. 14:108, Resisting an Officer, and was placed on unsupervised probation for a term of six months and ordered to pay a $50 fine.[103]

The Court finds that Plaintiff voluntarily pled guilty to resisting an officer, but now claims that he did so on the advice of his attorney to resolve the criminal charges. Viewing the evidence in a light most favorable to Plaintiff, the non-mover in this matter, the Court finds that the evidence supports Defendants' position that success on Plaintiff's § 1983 excessive force claim would undermine his guilty plea for resisting arrest.  Plaintiff contends both in his Complaint and in his deposition testimony that he did nothing wrong before being thrown to the ground by the officers and incurring significant injuries.  Plaintiff testified that he did not pull away from the officer, nor attempt to push an officer, nor do anything to incur what he claims was excessive force used in his takedown.  His claims are not that the officers used excessive force to address his resistance; instead, he insists that he did not perform any action which prompted the use of force.  The Court, therefore, finds that success on his § 1983 claim would challenge the validity of his conviction for violating La. R.S. 14:108, Resisting an Officer.  Accordingly, Plaintiff's claims are barred by *Heck v. Humphrey.*

---

[102] R. Doc. 1.
[103] R. Doc. 32-6.

**B. Plaintiff has Not Established Liability Regarding the Municipal Defendants, the City of Covington and the Covington Chief of Police Sued in his Official Capacity.**

In his Complaint, Plaintiff alleges the following:

> [A] proximate cause of the above-described injuries sustained by Dr. Muthuswamy was the negligence and/or fault of Culotta, in his official capacity as the Chief of Police of the City of Covington, including, but not limited to improperly hiring, training, and supervising his employees, failing to act with the required degree of care commensurate with the above described situation, and other acts of negligence and/or fault to be shown more fully at trial of this case.
>
> At all times pertinent hereto, Defendants Officers Liberto, Aucoin, and Carruth were employees acting in the course and scope of their employment with Defendants Covington and Culotta, in his official capacity as the Chief of Police of the City of Covington, liable for the wrongful acts of his employees, defendants Officers Liberto, Aucoin, and/or Carruth.[104]

As noted by the Supreme Court, "a suit against a governmental officer 'in his official capacity' is the same as a suit against [the] entity of which the officer is an agent."[105]

The initial inquiry before the Court is whether the Plaintiff has established any official custom or policy in place by the Covington Police Department or the City of Covington. Plaintiff provides no support for the allegations in his Complaint regarding improper training and does not address his claims against the Chief of Police or the City of Covington in his Rule 7(a) Reply at all.[106] Plaintiff has not provided any facts whatsoever to support his claims against the Chief of Police or the City of Covington, much less facts sufficient to support his claims. Plaintiff's Complaint and subsequent Rule 7(a) Reply are entirely silent regarding any policies

---

[104] R. Doc. 1 at p. 5.
[105] *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2, 117 S.Ct. 1734, 1737, 138 L.Ed.2d 1 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)).
[106] R. Doc. 27.

or customs.  They are also silent regarding any negligence in hiring, training, or supervising.  The sparse statements in Plaintiff's Complaint alleging improper hiring, training, and supervising, are nothing more than legal conclusions masked as facts. The Court finds that Plaintiff has failed to raise a genuine issue of material fact as to inadequate hiring, training, or supervising the officers.[107]  Therefore, Plaintiff's claims against the Chief of Police and the City of Covington fail.

Having found that Plaintiff's claims are barred by *Heck v. Humphrey* and that Plaintiff's claims against the City and the Chief of Police fail, the Court need not reach the issue of qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Motion For Summary Judgment filed by Laura Aucoin, Ryan Carruth, Stephen Culotta and the City of Covington[108] and the Motion For Summary Judgment filed by Michael Liberto[109]are both **GRANTED** and all of Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this September 29, 2020.

_____
**WENDY B. VITTER**
**United States District Judge**

---

[107] Plaintiff's sole contention of material fact in his opposition is that Officer Liberto's Affidavit states that, "Officers Aucoin and Carruth proceeded to gain control of Mr. Muthuswamy while on the ground and placed handcuffs on" him, while the Affidavit of Officer Aucoin states, "Officer Liberto and I were instructing him [Plaintiff] to remain on the ground and to place his hands on his back as he was under arrest and we were trying to handcuff him."  The Court does not find those statements to be genuine issues of material fact.
[108] R. Doc. 31.
[109] R. Doc. 32.